VICTOR F. DeFRANCIS
GREGORY J. MADDEN
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Mail Drop M-8102B
Washington, D.C.  20580
Tel: (202) 326-3495, -2426
Fax: (202) 326-2558
email:  vdefrancis@ftc.gov, gmadden@ftc.gov

PAUL J. FISHMAN
United States Attorney
J. ANDREW RUYMANN
Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ  08608
Tel: (609) 989-2190
Fax: (609) 989-2360

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>       v.<br><br>XACTA 3000, INC., and YEHUDA<br>LEVIN a/k/a JUDA LEVIN,<br><br>    Defendants. | Case No.  CV-09-399-JAP<br><br>**MEMORANDUM IN SUPPORT OF THE FEDERAL TRADE COMMISSION'S MOTION TO LIFT THE SUSPENSION OF THE $14.5 MILLION MONETARY JUDGMENT AGAINST YEHUDA LEVIN**<br><br>**RETURN DATE:  MAY 20, 2013** |

Table of Contents

I.   BACKGROUND....................................................................................................1

II.  FACTS...............................................................................................................2

     A.   Levin's Loans to Lakewood Cheder School....................................2

     B.   Levin Did Not Disclose the Lakewood Loans or the
          $700,000 Owed Him On His Sworn Financial
          Statement...............................................................................6

III. LEGAL ARGUMENT.............................................................................8

IV.  CONCLUSION.....................................................................................11

## I.   BACKGROUND

Because Yehuda Levin ("Levin") intentionally misrepresented his finances in sworn statements, the Federal Trade Commission ("FTC" or "Commission") moves the Court, pursuant to Section III of the Stipulated Final Order,[1] to lift the suspension of the $14.5 million judgment entered against Levin and render that judgment immediately due and payable.

The Stipulated Final Order settled FTC charges that Levin defrauded consumers by selling Kinoki Foot Pads with false or unsubstantiated advertising claims that they removed toxins from a person's body and treated a variety of medical conditions. Complaint, ¶¶ 14-15, Dckt. # 1.  Pursuant to the Stipulated Final Order, the Court entered a $14.5 million judgment in the total amount of consumer injury, but the judgment was suspended based on Defendants' sworn financial condition.  Significantly, the FTC's agreement to suspend the judgment was "expressly premised upon the truthfulness, accuracy, and completeness of Defendants' financial condition" and "the truthfulness, accuracy, and completeness" of sworn financial statements Defendants provided to the FTC.  *Id.* at 9.

---

[1] Stipulated Final Judgment and Order for Injunctive and Other Equitable Relief as to Defendants Xacta 3000, Inc. and Yehuda Levin, Section III, Right to Reopen ("Stipulated Final Order") entered against Levin and Xacta, 3000, Inc. ("Xacta") (collectively, "Defendants").  (Dckt. # 42, October 28, 2010).

However, the FTC recently discovered that in his sworn financial statement Levin failed to disclose hidden assets exceeding $700,000 as well as nearly $3 million in asset transfers.[2]  Specifically, Levin loaned the Lakewood Cheder School ("Lakewood") almost $3 million and Lakewood still owed him over $700,000 when he provided the FTC with his sworn financial statement.  Levin failed to report any information concerning these loans on his financial statement.

The Stipulated Final Order expressly provides that upon a finding of a "material misrepresentation [] or omission" the suspended judgment "shall become immediately due and payable." *Id*. at 9-10.   Levin's concealment of those assets and loans are material misrepresentations.  Accordingly, pursuant to the express language of the Stipulated Final Order, the suspension of the judgment "shall" be lifted rendering the judgment immediately due and payable.

## II.  FACTS
### A.  Levin's Loans to Lakewood Cheder School

In the spring of 2008, Levin transferred monies to Lakewood totaling $2,894,100.52.  Att. B, Excerpts of Rule 30(b)(6) Deposition of Lakewood Cheder School ("LCS 30(b)(6)") at 13:10-23; Att. C, LCS 30(b)(6) Ex. 3, LCS000005-07.  Lakewood's bank

---

[2] Att. A, Redacted Financial Statement of Juda Levin, May 3, 2010.

records identify three separate wires - $394,100.52 on April 15, 2008, $1,000,000 on May 15, 2008, and $1,500,000 on June 9, 2008 – that Lakewood specifically identifies as loans from Levin. Att. B, LCS 30(b)(6) at 15:3-18:19; Att. C, LCS 30(b)(6) Ex. 3, LCS000005-07.

These monies were loans and thus, assets of Levin.  Indeed, Levin repeatedly exercised the authority to direct repayments of those loaned monies during 2008, 2009, and 2010.  Specifically, in 2008, Levin directed 23 payments to either Xacta or other individuals or entities.  Att. B, LCS 30(b)(6) at 27:1-28:6, 35:2-36:7, 37:17-38:15; Att. D, LCS 30(b)(6) Ex. 6, LCS000001, LCS000046-47; Att. E, LCS 30(b)(6) Ex. 8, LCS000038-40; Att. F, LCS 30(b)(6) Ex. 7, LCS000019-35; Att. G, LCS 30(b)(6) Ex. 11, LCS000041-42.  Many of those payment records carried the notation "LR Yehuda Levin", which Lakewood testified stood for "loan repayment" made to Levin.  Att. B, LCS 30(b)(6) at 35:22-36:2, 50:15-19; Att. F, LCS 30(b)(6) Ex. 7, LCS000019-35; Att. G, LCS 30(b)(6) Ex. 11, LCS000042.

Levin continued to direct repayments of the outstanding loan balance throughout 2009.  In June 2009, Lakewood made two checks of $100,000 each payable to Levin.  Att. B, LCS 30(b)(6) at 49:9-15, 51:23-52:6; Att. G, LCS 30(b)(6) Ex. 11, LCS000043-45.  Further, on multiple occasions Levin directed Lakewood to reduce his balance to pay outstanding bills Lakewood had with

-3-

other individuals.  Att. B, LCS 30(b)(6) at 40:5-19 (accounting
showing Lakewood "was directed by Mr. Levin to pay people's
tuition off his loan, I believe, and to pay a wedding off his
loan").  For example, in October 2009, Levin authorized a $1,500
deduction "from the loan owed to me."  Att. H, LCS 30(b)(6) Ex.
10, LCS000011.  On three other occasions in 2009, Levin directed
other amounts to be "taken off my balance."  *Id*. at LCS000014,
LCS000017-18.  In each instance, Lakewood would do as directed
and maintained a log of the balance due Levin.  Att. B, LCS
30(b)(6) at 40:5-25; Att. I, LCS 30(b)(6)Ex. 9, LCS000002.

      During 2010, Levin continued to direct Lakewood to make
deductions from the outstanding "loan balance."  In June 2010,
Levin authorized a credit to the "loan balance due to me" and
requested Lakewood to "adjust my loan balance accordingly."
Att. H, LCS 30(b)(6) Ex. 10, LCS000012.  In July 2010, Levin
authorized another credit, again directing it towards the "loan
balance due to me" and requesting Lakewood to "adjust my loan
balance accordingly."  *Id*. at LCS000010.   In August 2010, Levin
authorized a further reduction "off my balance."  *Id*. at
LCS000015.

      In September 2010, Lakewood was able to pay down balances
owed to creditors from the proceeds of a property transaction.
Att. B, LCS 30(b)(6) at 53:25-54:8.  One of those creditors was
Levin.  Lakewood and Levin disagreed over the exact amount still

-4-

owed, with the disagreement being in the $30,000-$50,000 range. *Id.* at 55:16-22.   However, they agreed on an amount that is reflected in the September 21, 2010 transaction.   *Id.* at 23:23-24:5 (document "represents the balance of the money that was owed to Yehuda Levin and who he directed it be paid to . . . and the rest he took as a promissory note for $320,000.") Thereafter, Lakewood made payments of almost $400,000 as directed by Levin, including a $267,370 payment to Levin and a $50,000 payment to an individual to whom Levin owed money.   *Id.* at 24:6-25:24; Att. J, LCS 30(b)(6) Ex. 5, LCS000037; Att. K, LCS 30(b)(6) Ex. 13, LCS000055-59.   Even with these payments, Lakewood still owed Levin $320,000 and executed a promissory note to him in that amount.   Att. B, LCS 30(b)(6) at 20:6-22; Att. L, LCS 30(b)(6) Ex. 4, LCS00003-04.

At no time has Levin treated the monies transferred to Lakewood as anything but loans.   *See* Atts. H & L, LCS 30(b)(6) Exs. 10 & 4.   Moreover, at no time did Lakewood consider the monies paid to it by Levin to be anything other than loans requiring repayment.   Att. B, LCS 30(b)(6) at 35:22-36:2, 50:15-19, 72:17-20; Atts. F & G, LCS 30(b)(6) Exs. 7 & 11 ("LR" designation denotes loan repayment).   Indeed, Lakewood specifically rejected the suggestion that the monies were ever "donations" or "contributions."   Att. B, LCS 30(b)(6) at 72:17-20, 75:14-18.   The documents and testimony unequivocally

establish that Levin considered the monies as loans to Lakewood and that he directed how those loans would be repaid.

   **B.   Levin Did Not Disclose the Lakewood Loans or the $700,000 Owed Him On His Sworn Financial Statement**

   In October 2009 and May 2010, Levin provided the FTC with sworn financial statements on behalf of himself and Xacta. Atts. A & M.  Contrary to the express instructions, nowhere in the statements did Levin identify his transfers of nearly $3 million to Lakewood or the over $700,000 still owed to him at the time he submitted the sworn financial statements.

   Tellingly, there can be no mistake about the requirement to disclose the loans and any outstanding balances from them.  The first instruction of the section on Financial Information in Levin's  financial disclosure form states, in bold, **"REMINDER: 'Assets' and 'Liabilities' include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly."**  Att. A at 6 (emphasis original).

   The financial disclosures Levin submitted require the identification of any transfer of assets, including loans, made during the previous three years. Specifically, Item 30 of his individual financial statement required Levin to: "List each person to whom you have transferred, in the aggregate, more than $2,500 in funds or in other assets during the previous three years by loan, gift, sale, or other transfer.  For each such

person, state the total amount transferred during that period."
Att. A at 13.  Levin marked Item 30 as "N/A" for not applicable.
In response to the Xacta financial statement item regarding
transfer of assets, Levin identified only a loan to Nachum
Szanzer for $30,000 in August 2008 and a loan to his son Baruch
Levin for $140,000 in March 2008.  Att. M at 14.  Levin went on
to note that the loan to his son was subsequently repaid.  *Id*.
Thus, Levin obviously understood that loans must be identified
under the "Transfer of Assets" item – specifically including a
2008 repaid loan he made to his son.  Nonetheless, he did not
identify the almost $3 million loaned to Lakewood.[3]

Levin also concealed these loans in two other places on his
financial statement.  Item 17 of his submittal required
identification of **"Other Amounts Owed to You, Your Spouse, or
Your Dependents."**  Att. A at 7-8.  Item 17 requires an
identification of the debtor, the original amount owed, the
current amount owed, and any monthly payment.  Despite express
instructions, Levin did not identify the outstanding loans to
Lakewood.  *Id.* at 8.  Similarly, in Item 31, which requires a
combined balance sheet, Levin claimed "$0" for other amounts
owed to him.  *Id.* at 14.  Indeed, nowhere on the combined

---

[3] Levin also apparently loaned money to another entity, Services
for Children With Hidden Intelligence ("SCHI") in 2009 in the
amount of $581,997.14.  *See* Att. N.  He failed to disclose these
transfers in his sworn financial statement as well.  However, it
appears that these loans were largely repaid in 2009.

balance sheet did Levin provide any indication of the over $700,000 Lakewood still owed him at that time.

## III. LEGAL ARGUMENT

The Stipulated Final Order provides that the entered suspended judgment of $14.5 million "shall become immediately due and payable" if the Court finds Levin "failed to disclose any material asset . . . or made any other material misrepresentation in or omission from his [] financial statement." Stipulated Final Order, Section III.B. at 9-10. Levin materially misrepresented his financial condition by not disclosing the almost $3 million in loans he made and the over $700,000 owed to him at the time he submitted his sworn financial statement.

Levin's financial statement had three separate places where the loans to Lakewood and the monies owed him should have been identified. First, Item 30 required identification of any transfers of assets, by "*loan*, gift, sale, or other transfer," of greater than $2,500, during the previous three years. Ex. A at 13 (emphasis added). Notwithstanding the three separate wire transfers to Lakewood, totaling $2,894,100.52, Levin marked "N/A" – not applicable in his sworn response to Item 30. *Id*. Levin and Lakewood understood that these wired monies were a

loan.[4]  During 2008-2010, Levin directed payments from the monies Lakewood owed him as a result of those wire transfers.  In June 2009, Lakewood wrote $200,000 in checks payable to Levin.  Att. G, LCS 30(b)(6) Ex. 11, LCS000043-45.  Throughout 2008-09, Levin directed payments to various other individuals and entities, including authorizing reductions from the "loan owed to me" and "off my balance." Att. H, LCS 30(b)(6) Ex. 10, LCS000011, LCS000014, LCS000017-18. Levin cannot claim the Lakewood wire transfers were not loans when he directed repayments of the monies and characterized the monies as a loan.

Second, Levin should have reported the loans in Item 17, which required a detailing of "other amounts owed" to Levin. However, Levin identified no monies being owed to him.  Att. A at 7-8.  Third, the loans should have been reported in Item 31, the combined balance sheet.  Levin indicated "$0" in response to the line entry "Other Amounts Owed to You." *Id*. at 14.  Levin provided these responses despite the fact that, at that time, Lakewood owed Levin in excess of $700,000.

In June and July following Levin's submittal of his May 3, 2010 sworn financial statement, Levin authorized Lakewood to make credits to "the loan balance due to me" and to "adjust my loan balance accordingly."  Att. H, LCS 30(b)(6) Ex. 10,

---

[4] Given his response in the Xacta financial statement to a similar "transfer of assets" item wherein he detailed a repaid loan to his son, Levin knew the Lakewood transfers should have been disclosed.

LCS000010, LCS000012.  These transactions demonstrate Levin knew the wire transfers were loans and knew the monies were still owed to him when he submitted his sworn financial statement.

Finally, the fact that Lakewood owed Levin over $700,000 at the time he filed his financial statement is highlighted by the September 21, 2010 transaction with Lakewood.  When Lakewood had the opportunity to repay some of its creditors from a property sale, it contacted Levin and arranged for repayment.  Lakewood and Levin had different accountings of the outstanding balance, with Levin believing he was owed in the range of $30,000-$50,000 more than Lakewood identified.  Nonetheless, Lakewood and Levin agreed on the repayment amount and it is reflected in the September 21, 2010 transaction - $713,370.

Levin's lies in his sworn statements to the FTC regarding the Lakewood loans and over $700,000 Lakewood owed him were material misrepresentations of his financial condition.  Accordingly, pursuant to Section III of the Stipulated Final Order, the suspension of the judgment "shall" be lifted and judgment rendered immediately due and payable.

**IV.   CONCLUSION**

    For the foregoing reasons, the FTC moves the Court to lift the suspension of the entered $14.5 million judgment.

                       Sincerely,


Dated: April 23, 2013        _s/ Gregory J. Madden_
                             GREGORY J. MADDEN
                             Federal Trade Commission
                             Division of Enforcement
                             600 Pennsylvania Ave., NW
                             Suite M-8102B
                             Washington, DC  20580
                             (202) 326-2426, gmadden@ftc.gov
                             (202) 326-2558 (fax)

                             Attorney for Plaintiff